**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALI SALEH KAHLAH AL-MARRI,

    Petitioner - Appellant,

v.

BLAKE DAVIS, Warden, ADX-Florence,

    Respondent - Appellee.

No. 12-1230

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:11-CV-02255-RPM)**

---

Lawrence Lustberg, (Darold W. Killmer of Killmer, Lane & Newman, L.L.P., Denver, Colorado; Jonathan Manes of Gibbons, P.C., on the briefs), Newark, New Jersey, for Petitioner - Appellant.

Michael C. Johnson, Assistant United States Attorney, (and John F. Walsh, United States Attorney, on the brief), Denver, Colorado, for Respondent - Appellee.

---

Before **KELLY**, **MCKAY**, and **O'BRIEN**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

    Petitioner-Appellant Ali Saleh Kahlah al-Marri, a federal inmate, appeals

from the district court's judgment denying his petition for a writ of habeas

corpus. 28 U.S.C. § 2241. Mr. al-Marri is serving a 100-month federal sentence for conspiracy to provide material support or resources to a foreign terrorist organization (al-Qaeda). 18 U.S.C. § 2339B(a)(1). He contends that he is entitled to Good Conduct Time (GCT) for the 71 months he was held as a material witness and an enemy combatant. The Bureau of Prisons (BOP) and the district court did not agree. On appeal, he claims that he is entitled to a GCT calculation under 18 U.S.C. § 3624(b), or as an equitable remedy for his allegedly unconstitutional detention. Exercising our jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we affirm the district court's denial of relief.

## Background

On December 12, 2001, the Federal Bureau of Investigation (FBI) arrested Mr. al-Marri as a material witness to the September 11, 2001 terrorist attacks against the United States. Aplt. App. 6, 240. Following the arrest, Mr. al-Marri was held in Peoria County Jail, Illinois, until January 4, 2002. Id. at 6–7. He was then transferred to the Metropolitan Correctional Center (MCC) in Manhattan. Id. at 7.

Mr. al-Marri was subsequently indicted in federal district court (Southern District of New York) on charges of credit card fraud, bank fraud, identity theft, and making false statements to the FBI. Id. The charges were eventually dismissed on the ground of improper venue. Id. The government immediately

refiled an indictment in another federal district (Central District of Illinois). Id. Accordingly, Mr. al-Marri was transferred back to Peoria County Jail. Id.

On June 23, 2003, President George W. Bush declared Mr. al-Marri to be an "enemy combatant" and ordered Mr. al-Marri's transfer to the Department of Defense. Id. at 7, 215, 231. In response, the Illinois federal district court dismissed the indictment with prejudice. Id. at 7.

As an enemy combatant, Mr. al-Marri was held at the Consolidated Naval Brig in Charleston, South Carolina for over five years and eight months. Id. He repeatedly challenged the constitutionality of his detention. Id. The Fourth Circuit held that Mr. al-Marri's military detention was an unconstitutional violation of his Due Process rights. al-Marri v. Pucciarelli, 534 F.3d 213, 216 (4th Cir. 2008) (en banc) (affirming al-Marri v. Wright, 487 F.3d 160 (4th Cir. 2007)). On appeal, however, the Supreme Court vacated the Fourth Circuit's decision as moot because Mr. al-Marri had been transferred back to civilian custody pursuant to a Presidential order. al-Marri v. Spagone, 555 U.S. 1220 (2009).

On February 26, 2009, a federal grand jury in Illinois indicted Mr. al-Marri on two counts of providing material support or resources to a designated foreign terrorist organization. 18 U.S.C. § 2339B(a)(1); Aplt. App. 8. On March 10, 2009, the Secretary of Defense turned Mr. al-Marri over to the U.S. Marshals Service. Aplt. App. 8. After a detention hearing, Mr. al-Marri was denied bail

and transferred to Illinois, where he was held at a federal correctional institution. Id.

On April 30, 2009, Mr. al-Marri entered a plea agreement in which he pled guilty to one count of violating 18 U.S.C. § 2339B(a)(1). Id. at 232–51. The Guideline range was 292–360 months, but the statutory maximum was 180 months. Id. at 151.

Prior to sentencing, the BOP had indicated that under 18 U.S.C. § 3585(b), it would only grant prior custody credit for the time Mr. al-Marri spent in pretrial criminal detention between January 28, 2002 and June 23, 2003, and the period after he was transferred back to civilian custody, from March 10, 2009 through the date of sentencing. Id. at 9–10, 166, 172–74. In other words, the BOP was unwilling to credit Mr. al-Marri for the 71 months he was held as a material witness and an enemy combatant. Id.

Taking into account the BOP's indication that it would deny Mr. al-Marri credit for the 71 months, the sentencing court explained that it would reduce the maximum period of confinement (180 months) "by 71 months to reflect the periods of time for which he will not be credited by the [BOP]." Id. at 152. The court further reduced the sentence by nine months "to reflect the very severe conditions of part of his confinement at the Naval Brig." Id. Thus, the court sentenced Mr. al-Marri to 100 months' imprisonment. Id. at 145-56.

After sentencing, the BOP credited Mr. al-Marri under § 3585(b) for both

periods spent in pretrial criminal detention (totaling 745 days), but refused to grant prior custody credit for the 71 months during which Mr. al-Marri was held as a material witness and an enemy combatant. Id. at 9–10, 154. Pursuant to 18 U.S.C. § 3624(b)(1), which entitles a prisoner to 54 days of GCT for each year served, the BOP granted Mr. al-Marri 108 days of GCT for his 745 days of prior custody credit. Id. at 9–10, 154–56. Consistent with its denial of prior custody credit for the 71 months, the BOP declined to grant Mr. al-Marri GCT for the period he was held as a material witness and an enemy combatant. Id. at 9–10.

Through counsel, Mr. al-Marri wrote two letters to the BOP challenging the calculation of GCT. Id. at 180–83. The BOP reiterated the basis of its calculation, and advised that Mr. al-Marri could challenge the calculation through an administrative appeal. Id. at 184. Mr. al-Marri then brought an administrative appeal, which the BOP denied on August 27, 2010, explaining that Mr. al-Marri's time as a material witness and an enemy combatant did not constitute "official detention," under 18 U.S.C. § 3585(b). Id. at 185–86. Therefore, the BOP concluded he was not entitled to GCT under 18 U.S.C. § 3624(b). Id.

Mr. al-Marri then filed the instant § 2241 petition seeking a statutory calculation of GCT for the 71 months he was detained or, in the alternative, a calculation as an equitable remedy for his allegedly unconstitutional detention. Id. at 5–18. After oral argument, the district court denied the petition. Id. at 55–57. The court held that: 1) the GCT "statute does not become applicable until

a prisoner begins service of the sentence imposed by the court," and 2) "there is no authority for this court to grant the requested [equitable] relief." Id. at 56–57. Mr. al-Marri sought reconsideration. Id. at 59–77. In denying reconsideration, the district court again stated that the BOP had correctly calculated Mr. al-Marri's statutory entitlement to GCT. Id. at 104. Further, assuming it had the equitable authority to order the BOP to make a calculation "contrary to its statutory duty," the district court expressly declined to exercise that power. Id.

Discussion

When reviewing the denial of a habeas petition under § 2241, we review the district court's legal conclusions de novo and accept its factual findings unless clearly erroneous. Standifer v. Ledezma, 653 F.3d 1276, 1278 (10th Cir. 2011).

A.    Statutory Entitlement to Good Time Credit

Mr. al-Marri argues that the sentencing court's 71-month reduction qualifies as "prior custody credit" under § 3585(b), thereby entitling him to a calculation of GCT under § 3624(b). But this argument is foreclosed by the Supreme Court's decision in United States v. Wilson, 503 U.S. 329 (1992). Wilson held that a sentencing court does *not* have authority to grant prior custody credit under § 3585. Id. at 333 (emphasis added); see United States v. Jenkins, 38 F.3d 1143, 1144 (10th Cir. 1994). Instead, that authority is vested with the Attorney General, acting through the BOP. See Wilson, 503 U.S. at 335; Jenkins,

38 F.3d at 1144; see also United States v. Peters, 470 F.3d 907, 909 (9th Cir. 2006).

The sentencing court accounted for the 71-month period Mr. al-Marri was held as a material witness and an enemy combatant by reducing the maximum period of confinement. Were we to accept Mr. al-Marri's argument and deem the sentencing court's decision to be a § 3585(b) credit, the proper recourse would be to vacate the sentence and remand, thereby exposing Mr. al-Marri to the possibility of an additional 71 months. See Jenkins, 38 F.3d at 1144 (vacating district court's award of sentence credit). Instead, we construe the sentencing court's decision as an exercise of its discretion under 18 U.S.C. § 3553(a)(2)(A).

Additionally, credit is only available for "a term of imprisonment for any time . . . spent in official detention prior to the date the sentence commences . . . *as a result of the offense for which the sentence was imposed*." 18 U.S.C. § 3585(b) (emphasis added).[1] Here, Mr. al-Marri was held for 71 months as a material witness and an enemy combatant. The detention of enemy combatants is an exercise of Executive power—it is not dependent on a showing that the detainee has violated civilian law. Moreover, the Court has explained that the

---

[1] Section 3585 repealed an earlier statute that provided credit "for any days spent in custody in connection with the offense *or acts* for which the sentence was imposed." Bloomgren v. Belaski, 948 F.2d 688, 689–90 (10th Cir. 1991) (quoting 18 U.S.C. § 3568 (1976), repealed by the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, tit. II, § 212(a)(2), 98 Stat. 1987) (emphasis added).

purpose of detention is preventative rather than punitive.  See Hamdi v.

Rumsfeld, 542 U.S. 507, 518–19 (2004).  Mr. al-Marri was detained because the

President declared him to be an enemy combatant; he was not detained for an

alleged violation of the federal criminal code.  See United States v. Aslan, 644

F.3d 526, 532 (7th Cir. 2011) (denying credit where "time in state custody was

not as a result of the offense for which the federal sentence was imposed," and

noting that "no federal charges were even filed until after [petitioner] was

released from state custody"); cf. Bloomgren v. Belaski, 948 F.2d 688, 690 (10th

Cir. 1991).  Similarly, Mr. al-Marri was held under 18 U.S.C. § 3144 as a

material witness—*not* as punishment for providing material support to a terrorist

organization.  In short, neither period of Mr. al-Marri's 71-month detention met §

3585(b)'s express requirement, and he was therefore ineligible for GCT.

Next, Mr. al-Marri argues that if the 71-month sentencing reduction does

not constitute "prior custody" under § 3585(b), the "period should still be

awarded because . . . it is undoubtedly 'time served' and therefore part of the

'term of imprisonment' within the meaning of the GCT, § 3624(b)."  Aplt. Br. 23

n.4.  For the purpose of this appeal, we will assume that § 3624(b)'s phrase "term

of imprisonment" is ambiguous—i.e., it could be interpreted as encompassing

presentence custody credited under § 3585(b) *or* presentence custody as reflected

in a sentence crafted under § 3553.  However, even assuming the statute is

ambiguous, we believe the BOP reached the most logical conclusion.

In its response to Mr. al-Marri's appeal, the BOP explained that it had awarded GCT based on Mr. al-Marri's official detention period under § 3585(b). See Aplt. App. 186. As the Second Circuit recently held, "the most natural reading of the statute is that a defendant is eligible for GCT only as to the 'term of imprisonment' which constitutes the defendant's federal sentence as defined by § 3585." Lopez v. Terrell, 654 F.3d 176, 184 (2d Cir. 2011) (holding that GCT *cannot* be awarded where the sentencing court has granted an adjustment under U.S.S.G. § 5G1.3(b) for presentence custody because that time does not constitute part of the defendant's federal sentence); see also Schleining v. Thomas, 642 F.3d 1242, 1247–49 (9th Cir. 2011) (same). We likewise find the BOP's reading of the statute to be the most natural, and therefore defer to its persuasive interpretation.[2] See id. at 190 (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)); see also Izzo v. Wiley, 620 F.3d 1257, 1261 (10th Cir. 2010).

Finally, we are not persuaded by Mr. al-Marri's argument that Barber v. Thomas, 130 S. Ct. 2499 (2010) compels a different outcome. Barber held that "the phrase 'term of imprisonment' . . . refers to prison time actually served rather than the sentence imposed by the judge." Id. at 2506–07. Significantly,

---

[2] Consistent with the Lopez decision—and construing the facts in Mr. al-Marri's favor—we will also assume that the BOP's implementing regulation, 28 C.F.R. § 523.20, does not resolve the statutory ambiguity. See Lopez, 654 F.3d at 181–82. Thus, we do not apply the more deferential Chevron standard to the BOP's interpretation. See id. at 183; see also Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000). Instead, we consider whether the agency's informal interpretation has the "power to persuade." Christensen, 529 U.S. at 587.

Barber did not involve a claim for GCT based on a time period *outside* the sentence imposed—its holding concerned only time served *within* the petitioner's sentence. Perhaps more important, the Barber Court deferred to the BOP's calculation system which, according to the Court, "reflects the most natural reading of the statute." Id. at 2502. Similarly, we find that the BOP's calculation of GCT for Mr. al-Marri comports with the most natural reading of the statute—that GCT applies only to time served under the actual sentence. We therefore defer to the BOP's interpretation.

B.      Good Time Credit As an Equitable Remedy

As an alternative to his statutory claim, Mr. al-Marri argues that the BOP's refusal to calculate GCT for his unlawful detention entitles him to equitable relief. In denying reconsideration, the district court explained that its "ruling was and is that the [BOP] correctly determined that in awarding good time credits the term of imprisonment began when the sentence was imposed." Aplt. App. 104. Further, the district court stated that even assuming it had "equitable power to direct the [BOP] to act contrary to its statutory duty, the request is rejected." Id. As the district court explained, "[t]he sentencing court has, in effect, addressed the issue of the Petitioner's confinement as a material witness and as an enemy combatant in harsh conditions by its substantial departure from the Sentencing Guidelines." Id.

We review the district court's decision whether to exercise its equitable

powers for abuse of discretion.  Clark v. State Farm Mut. Auto. Ins. Co., 433 F.3d 703, 709 (10th Cir. 2005).  "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious . . . or manifestly unreasonable."  United States v. Damato, 672 F.3d 832, 838 (10th Cir. 2012) (quotation omitted).

Whether a district court is authorized to order a GCT calculation contrary to the BOP's statutory duty is hardly clear.  See Aplee. Br. 38–40.  But even assuming such power, the district court did not abuse its discretion in declining to exercise it.  As the district court explained, the BOP followed its statutory duty.  Moreover, the sentencing court thoroughly considered, and clearly accounted for, Mr. al-Marri's 71-month detention in arriving at a sentence.  Therefore, the district court's decision not to exercise its purported equitable power was not arbitrary, capricious, or unreasonable.

AFFIRMED.  We GRANT the government's motion to strike pages 202–13 from appellant's appendix because the material was not before the district court.  Lantec, Inc. v. Novell, Inc., 306 F.3d 1003, 1022 (10th Cir. 2002).

12-1230, <u>Al-Marri v. Davis</u>

**McKAY**, Circuit Judge, concurring:

I join in the court's opinion with the exception of its unnecessary resolution of whether Mr. al-Marri was eligible for prior custody credit under 18 U.S.C. § 3585(b) for the period of time he was detained as an enemy combatant. As the majority notes, the sentencing court did not have authority to grant prior custody credit under § 3585(b). (Majority Op. at 6.) The authority to do so is vested with the Attorney General, acting through the BOP. (*Id.*) To the extent Mr. al-Marri maintains he was improperly denied prior custody credit for his detention as an enemy combatant, the appropriate means by which to raise that argument is through a § 2241 petition challenging the BOP's refusal to award such credit. *See Heddings v. Garcia*, 491 F. App'x 896, 898 (10th Cir. 2012) (arguing in a § 2241 petition "that the BOP failed to properly credit prior custody/time served" (internal quotation marks omitted)). Mr. al-Marri has not brought such a challenge—he argues only that a calculation of good credit time was required because his detention "meet[s] the requirements for prior custody credit under 18 U.S.C. § 3585(b)." (Appellant's Opening Br. at 23.) Accordingly, the question of whether the BOP erred in refusing to award prior custody credit for Mr. al-Marri's detention as an enemy combatant is not properly before us. Nor do we have reason to consider whether the sentencing court should have awarded such credit—something it unquestionably lacked authority to do. I therefore consider the majority's discussion of this issue dicta. I would leave to another day, when

resolution of this issue is fully and squarely required in a case before us, any consideration of the matter.

Without reaching the merits of Mr. al-Marri's argument, I do note, however, that I see nothing in the language of 18 U.S.C. § 3585(b) that would foreclose the possibility that detention as an enemy combatant could, under the proper circumstances, qualify for prior custody credit.